ROSENBERG et al. v. KLOPFER.

(Supreme Court, Appellate Term. May 27, 1909.)

GUARANTY (§ 61*)—DISCHARGE OF GUARANTOR.

Defendant guaranteed payment of account of a third person to plaintiff to a specified extent. Plaintiff sold goods to the third person, and subsequently exacted a note from the third person in full payment of the

open account, part of which had not matured. The note, which was for 30 days, was given and accepted without defendant's knowledge or consent. *Held*, that defendant was not liable on his guaranty.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 71; Dec. Dig. § 61.*]

Appeal from City Court of New York, Trial Term.

Action by Samuel R. Rosenberg and another, doing business under the firm name of D. Rosenberg & Co., against Simon Klopfer. From a judgment for plaintiffs, after a trial before the court and jury, and from an order denying new trial, defendant appeals. Reversed, and new trial ordered.

Argued before DAYTON, SEABURY, and LEHMAN, JJ.

Rudolph Marks, for appellant.
Bogart & Bogart, for respondents.

DAYTON, J. The plaintiffs sued upon a written guaranty, which is as follows:

"New York, Feby. 13, '07.

"I, the undersigned, herewith guarantee payment of account of Klopfer Bros., of Wilkesbarre, Pa., to D. Rosenberg & Co., manufacturers of ladies' muslin undergarments, to the extent of $1,800.                    S. Klopfer.
"In presence of Alexander Cohen."

Plaintiffs had been, prior to January 21, 1907, selling goods for some time to Klopfer Bros. On or about that date they received an order from Klopfer Bros. amounting approximately to $1,800. Being dissatisfied because of delays in payments on previous orders, they wrote to Klopfer Bros. on February 7, 1907, refusing to ship the goods, and stating that:

"We have, under the circumstances, concluded to sell you these goods on a cash basis, allowing you 9 per cent. discount for cash, or a satisfactory guaranty that account will be paid promptly at maturity."

As a result of this letter defendant called upon the plaintiffs, and subsequently the plaintiffs' credit man, Cohen, who had prepared the guaranty above set forth, took it to defendant, and defendant signed it. The goods were sold upon 70 days' credit, and it was conceded that all the goods shipped under the order were paid for in full upon the maturity of the various items in accordance with the credit given on the invoices therefor. The last of these items under this order of January, 1907, was shipped in May of the same year. The complaint alleged, however, the sale of various goods between March 6, 1908, and June 23, 1908, by the plaintiffs to Klopfer Bros. in reliance upon the guaranty above set forth, and demands judgment for a balance of $995.22 thereon.

On August 24, 1908, Klopfer Bros. wrote to plaintiffs, stating in answer to a letter of August 24th, which was not produced, that they were temporarily embarrassed and could not then remit, but that:

"If you wish, however, we will be pleased to give you our note due October 1st, which may assist you in carrying our claim."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

On September 2, 1908, Klopfer Bros. again wrote plaintiffs:

"We herewith inclose you note. Many thanks for your kind indulgence."

They inclosed in this letter a note for 30 days, due October 1, 1908, for $997.47, the full amount of the balance due from them to the plaintiffs. Cohen (plaintiffs' credit man) testified that at this time (September 1, 1908) the amount due from Klopfer Bros. was about $800. Before the note matured Klopfer Bros. went into bankruptcy.

It was the defendant's contention that the guaranty which he signed was only intended to refer to the order of January, 1907, all shipments under which were conceded to have been paid for, and that therefore he was not bound upon any subsequent transactions. Plaintiffs claim that it was the intention of the parties that defendant should remain a continuous guarantor of Klopfer Bros.' account up to the amount of $1,800. There was conflicting evidence outside the instrument on this head. The case went to the jury on a charge which directed them to say whether or not they believed the parties intended the guaranty to be continuous, and the evidence is not sufficiently convincing in favor of defendant to warrant the disturbance of their verdict in this particular.

But as to the note above mentioned another question arises. It is clear (and plaintiffs' counsel consented that the jury be so charged) that, if the plaintiffs took the note without the knowledge of the defendant, it operated to discharge the guarantor as an additional and valid consideration for the extension of payment. The question of defendant's knowledge, then, became of first importance. Here, again, there was a sharp conflict in the testimony. Cohen, plaintiffs' credit man, testified that defendant called at their office before they got the note and promised to indorse the note. He said:

"I want to tell the jury that, because he promised to indorse it, we took it. I did not ask him, after we received the note, to indorse it. I did not come to him and show him we had the note."

He was then asked:

"Q. Can you explain to the court and jury why it is, when he said he would indorse the note, that you never made any attempt to get his indorsement after you got it? A. No, sir."

And afterwards:

"I had it in my possession for a few days. I did not attempt, within those few days, to get Mr. Simon Klopfer's indorsement to the note."

He next attempted to explain this by stating that defendant had "stated, when he called, I should try and have that note put through without his indorsement," and Cohen then stated:

"I want the jury to believe, notwithstanding the fact that Mr. Simon Klopfer told me his brother is in financially bad circumstances—that for God's sake to get any note I could, and that he promised to indorse it—that notwithstanding that I took it and put it through without his indorsement."

Cohen was the principal witness for the plaintiffs as to the note transaction. Goldstein, his employer, testified that they received the note from the debtor; that Mr. Cohen spoke to him in reference to it before its receipt; that he left all the office work to Cohen. He had

heard Cohen testify as to Klopfer's visit to plaintiffs' office concerning the note; but he (Goldstein) could not remember whether he was at his place of business that day or not. He says he had a conversation with Cohen about defendant's having been there; but he did not communicate with Klopfer. When he got the note, he kept it in the safe a couple of days, and sent it for collection. It further appeared from Goldstein's testimony that the note received with the letter of September 2, 1908, was not deposited for collection until September 12th, and Goldstein testifies that they did not in any way communicate with Klopfer during that period. The testimony of Cohen is shifty, evasive, and contradictory throughout; that of Goldstein is, at best, uncertain.

Against them on this issue defendant swears positively that he never was in their place of business but once, namely, at the time of making the guaranty; and the bankrupt, Klopfer, testified that defendant was not aware of any of the communications or correspondence concerning the note. In addition, we have the letters above referred to written at the time, which contain no reference to the guaranty or to the defendant. We cannot find, from such a record, that the plaintiffs have shown by a fair preponderance of evidence that defendant had knowledge of this note, or requested plaintiffs to accept it; nor does it seem reasonable to believe that, if they believed Simon Klopfer's guaranty still good, plaintiffs would, in addition thereto, have asked him to indorse Klopfer Bros.' note, and that is further evident from the fact that, when the note was received, they failed to do so. Indeed, it seems improbable from the testimony that plaintiffs were relying on their guaranty from defendant, and at the same time exacting from Klopfer Bros. this negotiable instrument in full payment of an open account, part of which had not matured.

Judgment reversed, and a new trial ordered, with costs to appellant to abide the event.

SEABURY and LEHMAN, JJ., concur in result.